IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MONICA SHEFFO, | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Action No. RDB-24-0399 |
| AE OUTFITTERS RETAIL CO., | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Monica Sheffo ("Plaintiff" or "Sheffo") brings this action against Defendant AE Outfitters Retail Co. ("Defendant" or "AE Retail"), alleging claims of disability discrimination, hostile work environment, failure to grant reasonable accommodations, and retaliation, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (ECF No. 1.)[1] Currently pending before this Court is Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 10). Sheffo has responded in opposition (ECF No. 13), and AE Retail replied (ECF No. 16). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated herein, Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 10) is GRANTED.

---

[1] For clarity, this Memorandum Order cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Order cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

1

# BACKGROUND

## I. Relevant Background on Parties

From August 14, 2016 to March 2021, Plaintiff Monica Sheffo worked as an at-will employee for Defendant AE Outfitters Retail Co.—a subsidiary of American Eagle Outfitters, Inc.—at AE Retail in Towson Town Center located in Towson, Maryland. (ECF No. 10-2 ¶ 7, ECF No. 13 at 4; ECF No. 1 ¶ 2.) Sheffo alleges that she "is an individual with several disabilities, including rheumatoid arthritis, osteomalacia, alopecia, and autism," which limit Sheffo's ability to work.[2] (ECF No. 1 at ¶¶ 7, 17–24.) Sheffo alleges that during her employment her supervisors mocked her for her disabilities, forced her to lift heavy items despite her disabilities, and refused to provide accommodations for her disabilities such as a chair on which she could sit as she worked. (ECF No. 1 ¶¶ 14–85.) Sheffo alleges that these actions caused her "significant physical discomfort, increased risk of physical injury, and emotional distress for years as a consequence of her managers' actions." (ECF No. 1 ¶ 67.) Sheffo underwent surgery to reconstruct her foot in March 2021. (*Id.* ¶¶ 20, 68.) She did not return to work after the surgery, and she alleges that she was "constructively discharged" sometime in May 2021. (*Id.* ¶ 78.).[3]

## II. The Associate Handbook and Arbitration Agreement Contained Therein

In or around June 2019 and continuing into July 2019, AE Retail began distributing a

---

[2] More specifically, Sheffo describes that her conditions (1) "prevent[] her from lifting objects heavier than twenty (20) pounds" (ECF No. 1 ¶ 18); (2) "render[] her bones weak and easily breakable" (*id.* ¶ 19); (3) "cause[] difficulty and pain while walking or standing for extended periods" (*id.*); (4) "affect[] her ability to understand new instructions and perform mathematical calculations quickly" (*id.* ¶ 23); and (5) require her "to be shown how to perform new tasks with clear instructions, sometimes given in different ways, and multiple times." (*Id.* ¶ 24.)

[3] AE Retail indicates that "Sheffo was separated as an employee in AEO's system as of October 23, 2021." (ECF No. 10-2 ¶ 7.)

revised Associate Handbook (the "Handbook"), which contained a Dispute Resolution Program Agreement ("Arbitration Agreement" or "Agreement") and Acknowledgment. (ECF No. 16-1 ¶¶ 4–5.) The first page of writing in the Handbook states "The Handbook provisions are not promises. . . . The only exception is the Dispute Resolution Agreement, which is included here for your reference and for which you will be asked to specifically agree as part of your employment with [AE Retail]." (*Id.* at 7.)

The Dispute Resolution Program Agreement makes clear in its introductory paragraphs that either a signature and/or application for or continued employment constitute acceptance of the Agreement: "[Y]our decision to apply for or continue employment with AEO and/or your signature below constitutes your acceptance of the Dispute Resolution Program." (ECF Nos. 10-3 at 4, 16-1 at 109.) Additionally, the Agreement provides:

> Any reference in this Program to AEO also will be a reference to all parents, subsidiaries, partners, divisions, and affiliated entities, and any companies that are acquired by AEO or its subsidiaries, parents, partners, divisions, or affiliates, and all benefit plans, the benefit plans' sponsors, fiduciaries, administrators, affiliates, and all successors and assigns of any of them.

(ECF Nos. 10-3 at 4, 16-1 at 109.) This clearly includes Defendant, who is a subsidiary to American Eagle Outfitters, Inc.[4] (ECF No. 1 ¶ 2.)

The Arbitration Agreement provides that: "[T]his Program applies to any dispute arising out of or related to your employment with AEO or the termination of your employment with AEO." (ECF Nos. 10-3 at 4, 16-1 at 109.) In addition, the Agreement specifically outlines that it applies to the claims Plaintiff advances in this litigation. Specifically,

---

[4] "AEO" is defined at the beginning of the Arbitration Agreement as "American Eagle Outfitters." (ECF No. 16-1 at 109.) Thus, any reference to AEO in the Agreement includes Defendant AE Retail and American Eagle Outfitters, Inc.

3

the Agreement provides that it applies "only to the resolution of disputes that otherwise could be resolved in a court of law," including: "[t]ort or statutory claims for discrimination and/or harassment;" "claims for retaliation, wrongful termination, violation of public policy, personal injury, negligence and unsafe working conditions;" and "claims for violation of any federal, state or other governmental law, common law, constitution, statute, regulation, or ordinance, including, but not limited to, the . . . Americans With Disabilities Act[.]" (ECF Nos. 10-3 at 5, 16-1 at 109–10.) Of further import here, the Agreement contains a delegation provision which states: "The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Program, including, but not limited to, any claim that all or part of this Program is void or voidable." (ECF Nos. 10-3 at 9, 16-1 at 114.)

At the end of the Arbitration Agreement is the Dispute Resolution Program Acknowledgement & Agreement. (ECF Nos. 10-4, 16-1 at 124.) It provides:

> I acknowledge and agree that I have received and carefully read this dispute resolution program and that I understand and agree to its terms. By applying for employment or continuing my employment with AEO and/or by signing below, I agree to this program and agree that I and AEO will arbitrate claims covered by this program.

(ECF Nos. 10-4, 16-1 at 124.) In addition, the "Handbook Acknowledgment" provides that:

> I understand that the Handbook is not a contract of employment. Only the AEO Dispute Resolution Program, which stands as a separate contract but was provided to me with this Handbook for ease of reference, is a separate contract of employment.
>
> . . .
>
> By clicking the "I Agree" (if this is provided electronically to me) or by signing below (if this is presented in-print to me), I understand I am agreeing with and acknowledging each of the above statements. I understand that the only

contract of employment that I have, unless it is signed by the Chief Executive Officer, is the contract that sets forth AEO's Dispute Resolution Policy & Program, which is included with this Handbook for my ease of reference."

(ECF No. 16-2 at 5.)

### III. Sheffo's Agreement and Subsequent Complaint

In support of the instant Motion, AE Retail submitted the Declaration of Brandon Stein, an HRIS Solutions Architect for American Eagle Outfitters, Inc. (ECF No. 10-2.) Stein submits that, during Plaintiff's employment, Sheffo was presented with the Arbitration Agreement and given the opportunity to review its terms. (*Id.* ¶ 7.) Stein further declares that AE Retail's records reflect that Sheffo signed the Handbook Acknowledgment on March 7, 2021. (*Id.* ¶ 13; ECF No. 10-4.) In support of their Reply, AE Retail submitted the Declaration of Zach Cagni, a Human Resource Generalist for American Eagle Outfitters, Inc. (ECF No. 16-2.) Therein, Cagni submits that Sheffo also signed the Handbook Acknowledgment on July 14, 2019. (*Id.* ¶ 5, at 5.) Cagni further declares that Plaintiff's personnel records reveal she was presented with the June 2019 Associate Handbook, the Arbitration Agreement, and corresponding Acknowledgments again in 2021, (*id.* ¶ 6), and that Sheffo signed both the Handbook Acknowledgment and the Dispute Resolution Program Acknowledgment & Agreement on March 7, 2021. (*Id.* ¶ 6, at 7, 9.)

On August 25, 2021, Sheffo filed a Charge of Discrimination against AE Retail in the U.S. Equal Employment Opportunity Commission ("EEOC") for disability discrimination and retaliation. (ECF No. 1 ¶ 82.) On March 24, 2023, the EEOC issued their determination that "there is reasonable cause to believe that [AE Retail] subjected [Sheffo] to harassment based on her disabilities and ultimately constructively discharged her in violation of the

5

Americans with Disabilities Act of 1990, as amended." (*Id.* ¶ 83; ECF No. 13-3 at 2.) The EEOC proposed a Conciliation Agreement to AE Retail, the details of which are not present in the filings. (ECF No. 13-3 at 2–3.) Ultimately, the EEOC declined to pursue this case and on November 21, 2023 issued Sheffo a Notice of Right to Sue. (ECF No. 1 ¶ 84.)

And so, on February 9, 2024, Sheffo initiated the instant case, filing a four-count Complaint alleging claims of disability discrimination, hostile work environment, failure to grant reasonable accommodations, and retaliation, in violation of the ADA, 42 U.S.C. § 12101 *et seq.* (*Id.* ¶¶ 86–133.) On March 27, 2024, AE Retail moved to compel arbitration, pursuant to the Arbitration Agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and to stay proceedings pending arbitration. (ECF No. 10.) In opposition, Sheffo argues that AE Retail failed to prove the existence of the Agreement, that AE Retail did not give any consideration, that the terms were unconscionable, and that discovery is needed. (ECF No. 13.) Defendant's Motion to Compel Arbitration (ECF No. 10) is ripe for review.

## STANDARD OF REVIEW

### I.      Motion to Compel Arbitration

Defendant has filed the pending Motion to Compel Arbitration (ECF No. 10) pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* As this Court has previously noted, although motions to compel arbitration "exist in the netherworld between a motion to dismiss and a motion for summary judgment," the decision to treat a motion to compel as one or the other "turns on whether the court must consider documents outside the pleadings." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). Because the Arbitration Agreement is not integral to the Complaint, and thus the Court must consider the Agreement

6

itself as extrinsic evidence, the Court construes the Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 10) as a motion for summary judgment. *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) ("Treating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered."). As this Court has previously noted, under Federal Rule of Civil Procedure 56(a), "motions to compel arbitration shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Thomas v. Progressive Leasing*, No. RDB-17-1249, 2017 U.S. Dist. LEXIS 176515, at *2 (D. Md. Oct. 25, 2017) (citing FED. R. CIV. P. 56(a); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251–52 (D. Md. 2011)).

Although the Fourth Circuit has characterized the standard of review on a Motion to Compel Arbitration as "*akin to* the burden on summary judgment," the pending motion will not be converted to or treated as a motion for summary judgment. On the contrary, the remedies available to a defendant moving to compel arbitration are limited to a stay or dismissal of the action. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("[T]he FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements [citing 9 U.S.C. § 3] . . . Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable. [citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)].")

The standard of review on a Motion to Compel Arbitration pursuant to the FAA is "'akin to the burden on summary judgment.'" *Galloway v. Santander Consumer USA, Inc.*, 819

F.3d 79, 85 (4th Cir. 2016) (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)). Therefore, motions to compel arbitration "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Rose*, 816 F. Supp. 2d at 251–52.

## II. The Federal Arbitration Act

"Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986)). The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, requires that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("This text reflects the overarching principle that arbitration is a matter of contract." (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010))). Arbitration agreements "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 364 (2011) (internal citation omitted). The FAA also requires that a federal court stay any proceedings that present a controversy which the parties have agreed to arbitrate. 9 U.S.C. § 3. Moreover, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor

8

of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Despite this presumption, agreements to arbitrate are fundamentally about private choice. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Federal courts have the authority to compel arbitration, but in making that determination this Court is mindful that its role is limited to determining the "question of arbitrability," or the "gateway dispute about whether the parties are bound by a given arbitration clause." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

The United States Court of Appeals for the Fourth Circuit has held that a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001). State contract formation law determines the validity of arbitration agreements. *Concepcion*, 563 U.S. at 338–39; *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). In

9

Maryland, "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988). As this case involves the issue of the validity of the arbitration agreement and because Sheffo contests the existence of the agreement but appears to concede that if it exists, it was entered into by the parties in Maryland, Maryland law governs.

### III. Applicable Maryland Law

Under Maryland law, an agreement to arbitrate disputes is enforceable if it is a valid contract. *Hill*, 412 F.3d at 543. To determine the validity of the arbitration agreement, Maryland courts look at the four corners of an arbitration provision. *Id.* As with any contract, the arbitration provision must be supported by adequate consideration in order to be valid and enforceable. *See Cheek v. United Healthcare*, 835 A.2d 656, 661 (Md. 2003).

### ANALYSIS

Through its Motion (ECF No. 10), AE Retail moves this Court to compel Sheffo to arbitrate her claims pursuant to the terms of the Arbitration Agreement, in accordance with the FAA, and to stay the proceedings pending arbitration. AE Retail asserts that Sheffo is precluded from litigating her claims before this Court because she is a party to a valid and enforceable arbitration agreement agreeing to arbitrate "any dispute arising out or related to [Plaintiff's] employment with AEO"[5] that Plaintiff has with Defendant, including claims for violating the ADA, handicap, or disability laws, and claims for retaliation or wrongful termination. (ECF No. 10-1 at 3–4.) Moreover, the Agreement expressly delegates the

---

[5] Defendant uses "AEO" in its Motion to Compel Arbitration and Stay Proceedings to refer collectively to American Eagle Outfitters, Inc. and Defendant AE Outfitters Retail Co. (ECF No. 10-1 at 1.)

10

threshold question of arbitrability to the arbitrator. (ECF Nos. 10-3 at 8–9, 16-1 at 113–14.) In opposition, Sheffo insists that AE Retail has failed to prove the existence of the arbitration agreement, that the contract lacks consideration, that the contract is unconscionable, and that she needs discovery to properly respond. (ECF No. 13 at 6–14.)

Of the four elements listed by the Fourth Circuit in *Whiteside* as necessary to compel arbitration, only the second—"a written agreement that includes an arbitration provision which purports to cover the dispute"—is in question here. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); (*see* ECF Nos. 13, 13-1.) This Court finds that an arbitration agreement exists, that the parties validly entered into that contract, that an arbitrator must decide whether the terms are unconscionable, and that discovery is not needed. Accordingly, Defendant's Motion to Compel Arbitration and to Stay Proceedings (ECF No. 10) is GRANTED.

### I. The Parties Entered into a Valid Arbitration Agreement

The Federal Arbitration Act "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019) (citing 9 U.S.C § 2). Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Techs., Inc.*, 475 U.S. at 648–49. State contract formation law determines the validity of arbitration agreements. *Concepcion*, 563 U.S. at 338–39; *Hill*, 412 F.3d at 543. In Maryland, a contract requires (1) offer, (2) acceptance by another, and (3) consideration. *Cochran v. Norkunas*, 919 A.2d 700, 713 (Md. 2007).

Here, Defendant presented Plaintiff its offer to mutually agree to arbitrate disputes by distributing its Handbook which contained the Arbitration Agreement. (ECF No. 16-1.) The

Agreement explicitly provided that it applied to American Eagle Outfitters, Inc. and "all parents, subsidiaries, partners, divisions, and affiliated entities." (ECF No. 16-1 at 109.) Defendant AE Retail as a subsidiary to American Eagle Outfitters, Inc. is a party to this agreement. (ECF No. 1 ¶ 2.) Plaintiff accepted these terms by signing the Agreement on March 7, 2021.[6] (ECF No. 16-2 at 7.) Plaintiff's inability to recall the Agreement does not impact her acceptance. *See Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 350 n.11 (D. Md. 2015) (citing *Dassero v. Edwards*, 190 F.Supp.2d 544, 555 (W.D.N.Y. 2002) ("[A] party cannot place the making of [an] arbitration agreement in issue simply by opining that no agreement exists") (additional citations and quotations omitted); *Palmer v. Johns Island Post Acute, LLC*, No. 2:22-3432-RMG-KDW, 2023 U.S. Dist. LEXIS 109618, at *15 (D.S.C. Mar. 7, 2023) ("a lack of recollection alone is insufficient to reasonably call into question the validity of the document.") (internal citations and quotations omitted). Moreover, Plaintiff does not deny that she signed the Agreement. (*See generally* ECF No. 13.)

Mutual agreements to arbitrate form adequate consideration. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate between an employer and an employee constitutes sufficient consideration for their arbitration agreement."). Despite Plaintiff's claims to the contrary, it is irrelevant to the issue presently before this Court that March 2021 would be Plaintiff's last month working for AE Retail because the Agreement applies to "all claims or controversies, past, present or future." (ECF No. 16-1 at 109.) A mutual agreement to arbitrate future cases that may arise due to past claims is adequate

---

[6] Plaintiff previously signed the Handbook Acknowledgement in 2019 but it is not important to explore whether Sheffo agreed to the Arbitration Agreement in 2019 given her unequivocal agreement in 2021.

consideration. Regardless of when the potential claims arose, both parties have agreed to mutually settle any future lawsuits through arbitration, even if those lawsuits stem from actions that occurred before signing the arbitration agreement. This Court is guided by the principles that "all ambiguities be resolved in favor of arbitration," *Choice Hotels Int'l, Inc.*, 252 F.3d at 710, and that mutual agreements to arbitrate form adequate consideration, *O'Neil*, 115 F.3d at 275, to conclude that there would be adequate consideration even if the Agreement only applied to past claims.[7]

In her Complaint, Sheffo asserts that Defendant discriminated, harassed, and failed to provide reasonable accommodations to Sheffo because of her various medical conditions, in violation of the ADA. (ECF No. 1.) The Agreement clearly covers the instant dispute, (ECF Nos. 10-3 at 5, 16-1 at 109–10 (providing that the Agreement applies to any dispute arising out of employment or termination of employment with AEO, including "[t]ort or statutory claims for discrimination and/or harassment;" "claims for retaliation, wrongful termination, violation of public policy, personal injury, negligence and unsafe working conditions;" and "claims for violation of any federal, state or other governmental law, common law, constitution, statute, regulation, or ordinance, including, but not limited to, the . . . Americans With Disabilities Act")), and further provides that the arbitrator holds "exclusive authority" over the "interpretation, applicability, enforceability, or formation" of the Agreement. (ECF Nos. 10-3 at 9, 16-1 at 114.)

---

[7] However, an arbitration agreement may be unconscionable (rather than lacking consideration) when one party has a cause of action that has accrued while the other party does not. *See Mould v. NJG Food Serv. Inc.*, 986 F. Supp. 2d 674 (D. Md. 2013) The court held that the arbitration agreement in that case was procedurally unconscionable as a take-it-or-leave-it contract of adhesion and substantively unconscionable because the plaintiff had a cause of action that had accrued while the defendant did not. *Id.* at 678–79. However, as discussed in Part II, *infra*, the arbitrator must decide the issue of unconscionability.

13

**II. Plaintiff's Unconscionability Argument Must Be Submitted to an Arbitrator**

Sheffo argues that the Agreement is unconscionable because it was drafted unilaterally by AE Retail—the dominant party, presented on a take-it-or-leave-it basis, and signed when Sheffo's claims had already accrued. (ECF No. 13 at 7–10.) However, Sheffo never specifically claims that the delegation provision within the Agreement is unconscionable. (*See generally* ECF No. 13.) When a party fails to challenge the delegation provision in a contract, courts must delegate the issue of unconscionability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) (finding that an unconscionability argument must be delegated to the arbitrator because the Plaintiff challenged the agreement in its entirety but never specifically challenged the delegation clause); *Modern Perfection, LLC v. Bank of Am., N.A.*, Civil Action No. 22-cv-02103-LKG, 2023 U.S. Dist. LEXIS 148144, at *23 n. 6 (D. Md. Aug. 22, 2023) (concluding that an arbitrator must decide the issue of unconscionability because the Plaintiff challenged the agreement has a whole as unconscionable but did not specifically contest the delegation clause); *House v. Rent-A-Center Franchising Int'l, Inc.*, No. 3:16-06654, 2016 U.S. Dist. LEXIS 176383, at *11 (S.D. W. Va. Dec. 21, 2016) ("If a party fails to challenge the delegation provision, the court must allow the arbitrator to determine enforceability and unconscionability of the underlying arbitration agreement."). The delegation provision in this Agreement gives the arbitrator "exclusive authority" over any dispute regarding the "interpretation, applicability, *enforceability*, or *formation*" of the Agreement. (ECF Nos. 10-3 at 9, 16-1 at 114) (emphasis added). This provision covers each of Sheffo's unconscionability arguments; as such, these issues must be delegated to the arbitrator.

14

### III. Plaintiff's Requests for Discovery Do Not Create a Genuine Issue of Material Fact and are Denied

Sheffo argues that if the Court does not deny Defendant's Motion outright, it should order limited discovery, allow her a reasonable period of time to review the discovery, and permit her to supplement her opposition if necessary. (ECF No. 13 at 13–14.) Because the Motion to Compel Arbitration is treated as one for summary judgment, Sheffo's request to conduct limited discovery must be considered in this same context. Accordingly, pursuant to Federal Rule of Civil Procedure 56(d), Sheffo must demonstrate "by affidavit or declaration . . . that [she] cannot present facts essential to justify [her] opposition" to the motion to compel arbitration. *See* Fed. R. Civ. P. 56(d). Sheffo must identify with some particularity the additional discovery needed to defeat the motion to compel arbitration. *Lamb v. Modly*, No. PX-19-3469, 2021 U.S. Dist. LEXIS 62841, 2021 WL 1198158, at *7 (D. Md. Mar. 30, 2021). As Judge Hollander of this Court has previously noted, it is not sufficient for the nonmovant to "demand discovery for the sake of discovery." *See Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quotation omitted).

Here, Sheffo has provided an affidavit wherein she requests (1) the complete Associate Handbook; (2) any document to which her signature page was attached; (3) her complete personnel file; (4) time records of her employment in March 2021; and (5) all AE Retail communications that reference or relate to the alleged signing of the arbitration agreement. (ECF No. 13-4.) AE Retail had previously attached excerpts from the Associate Handbook (ECF No. 10-3) and Sheffo's signature page (ECF No. 10-4) to their Motion to Compel Arbitration (ECF No. 10) and attached requested items (1) and (2) to their Reply (ECF Nos. 16-1, 16-2). As discussed herein, the Arbitration Agreement provides that the arbitrator "shall

have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation" of the agreement. (ECF No. 10-3.) Because Sheffo has not demonstrated that the requested discovery could create a genuinely disputed issue of material fact on the question of arbitrability, her motion is denied. *See Hamilton*, 807 F. Supp. 2d at 342 ("A non-moving party's Rule 56(d) request for additional discovery is properly denied 'where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'") (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 953 (4th Cir. 1995)).

## IV. This Matter Will Be STAYED While the Parties Litigate Their Claims and Defenses Against Each Other Before an Arbitrator

Because the Court concludes that the arbitration agreement is valid and enforceable, the Court also must stay the matter. *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (holding that, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration)); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("[T]he FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory." (quoting 9 U.S.C. § 3)).

Accordingly, Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 10) is GRANTED.

16

## CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 10) is GRANTED.

A separate Order follows.

Date: July 12, 2024

/s/
Richard D. Bennett
United States Senior District Judge